103 F.3d 131
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Glenn GARNER, Defendant-Appellant.
 No. 95-6682.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1996.
 
 Before: MARTIN, Chief Judge; KEITH and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Charles Glenn Garner appeals his conviction under 18 U.S.C. § 922(g), as a felon in possession of a firearm, claiming that the district court lacked jurisdiction and that the evidence presented is insufficient to support the jury verdict.
 
 
 2
 On March 25, 1995, Garner visited the home of his ex-wife, Sharon Garner, where he engaged in a physical assault on Ms. Garner, took her .22 caliber pistol, and then left the premises. Ms. Garner reported the assault to the Henderson County Sheriff's Department and informed the department that her gun had been taken by Garner.
 
 
 3
 On April 10, Officer Billy Todd Bowman and Deputy Gerald Wooley responded to a disturbance call at a mobile home park and arrived to find Garner and his brother, Clois Garner, entangled in an altercation. The brothers separated when they noticed the presence of the officers. Although Garner initially attempted to leave the scene on a three-wheeled vehicle, he complied with Deputy Wooley's order to get off the vehicle. Garner then informed Deputy Wooley that he possessed a firearm, and surrendered the weapon. Expert testimony at trial established that the gun had been manufactured in California.
 
 
 4
 On May 22, a federal grand jury for the Western District of Tennessee, returned a one-count indictment charging Garner with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court then conducted a trial in which the jury returned a verdict of guilty. This timely appeal followed.
 
 
 5
 At trial, Garner argued that he possessed the firearm on the evening of his arrest because he feared that his brother would kill him. Although the district court provided the jury with an instruction regarding the defense of justification by necessity, the jury ultimately returned a verdict of guilty. Garner now argues that the government's proof was insufficient as a matter of law to support a finding that his possession of the firearm was not justified out of necessity.
 
 
 6
 When considering a claim of insufficient evidence, this Court examines the evidence in the light most favorable to the government, and draws all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense were satisfied beyond a reasonable doubt. United States v. Riffe, 28 F.3d 565, 567 (6th Cir.1994).
 
 
 7
 This Court established the elements of a necessity or justification defense in United States v. Singleton, 902 F.2d 471 (6th Cir.1990) (citations omitted; bracketed material in original) stating that the defendant must establish:
 
 
 8
 (1) that the defendant was under an unlawful and "present, imminent, and impending [threat] of such nature as to induce a well-grounded apprehension of death or serious bodily injury;"
 
 
 9
 (2) that the defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose criminal conduct];"
 
 
 10
 (3) that the defendant had no "reasonable legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm'," and
 
 
 11
 (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."
 
 
 12
 "The fifth requirement is that the defendant show that he did not maintain the illegal conduct any longer than absolutely necessary." United States v. Newcomb, 6 F.3d 1129 (6th Cir.1993).
 
 
 13
 Review of the evidence presented at trial indicates that a reasonable jury could have found, beyond a reasonable doubt, that the defense of necessity did not apply. For example, Garner's testimony describes the events leading to his arrest, including a complete description of the altercation with his brother. Garner states that, after he and his brother began to argue, his brother left to "call the law." The jury could have determined that Garner's decision to remain at the premises failed to satisfy the second or third elements of the necessity defense; the jury could have found that Garner "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose criminal conduct]," or that Garner had a "reasonable legal alternative to violating the law."
 
 
 14
 Furthermore, even if the jury determined that Garner's possession of the weapon was justified as a necessity on the evening of his arrest, the jury could have determined that, in retaining possession of the weapon from March 25 until April 10, Garner failed to satisfy the third element of the necessity defense. Garner claimed that he inadvertently took the gun from his ex-wife and that he could not return the gun because his ex-wife had obtained a protective order restraining Garner from approaching her. However, the jury could have determined that Garner intentionally took the gun from his ex-wife, or in any event, that Garner could have arranged for another person to return the gun to his ex-wife's possession. Such a conclusion would be completely consistent with this Court's prior decisions regarding the necessity defense. With regard to the third element of the necessity defense, this Court has recognized that "the cases in which this requirement has been deemed not to have been met have all been cases in which the defendant's illegal conduct spanned over a long period." United States v. Newcomb, 6 F.3d 1137 (6th Cir.1993).
 
 
 15
 Therefore, review of the record reveals ample evidence supporting the jury's decision that Garner's possession of the gun was not justified as a necessity.
 
 
 16
 Garner also argues that the Supreme Court's recent decision in United States v. Lopez, 115 S.Ct. 1624 (1995), compels the reversal of his conviction. In Lopez, the Court struck down 18 U.S.C. § 922(q) as a restriction on purely intrastate activity that could not be supported by the Commerce Clause of the United States Constitution. Garner now argues that the reasoning in Lopez compels a similar result for a conviction under 18 U.S.C. § 922(g)(1).
 
 
 17
 However, Lopez itself reveals the error of such a position. Fundamental to the Court's decision in Lopez, was the fact that " § 922(g) has no express jurisdictional element which might limit its reach to a discreet set of firearms possessions that additionally have an explicit connection with or effect on interstate commerce." Lopez, 131 L.Ed.2d at 639. Conversely, Section 922(g) expressly limits its application to interstate activity.
 
 
 18
 Indeed, this Court has consistently held that Lopez did not disturb the constitutionality of Section 922(g)(1). United States v. Turner, 77 F.3d 87 (6th Cir.1996); United States v. Chesney, 86 F.3d 564 (6th Cir.1996); United States v. Murphy, 96 F.3d 864 (6th Cir.1996); United States v. Sanders, 1996 WL 577153 (6th Cir.1996). As this Court stated in Chesney, "Lopez also did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported at any time in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers." Chesney, 86 F.3d at 570-71.
 
 
 19
 Here, the government offered expert testimony that the gun possessed by Garner was manufactured in California. It naturally follows that the weapon had to have been transported in interstate commerce. Therefore, Section 922(g) is constitutional on its face and as applied to Garner.
 
 
 20
 For the reasons stated above, the decision of the district court is affirmed.
 
 
 21
 BATCHELDER, Circuit Judge, concurring.
 
 
 22
 I concur in the majority's decision that the jury's rejection of the necessity defense is amply supported by the evidence in this case, and that under the law of this circuit, Garner's conviction cannot be reversed on the basis of United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624 (1995). I write separately only because I cannot agree with the majority that Lopez "itself reveals the error" of defendant's contention that 18 U.S.C. § 922(g)(1) exceeds the power of Congress under the Interstate Commerce Clause. For the reasons stated in my concurrence in United States v Chesney, 86 F.3d 564, 574-82 (6th Cir.1996), I believe that the statute is beyond Congress's interstate-commerce power. However, because I am bound by Chesney, I concur in the result reached by the majority here.